UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMES LAMAR HENDERSON,

                Plaintiff,

    v.                                          Case No. 24-cv-878-pp

DR. MONESE, *et al.*,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 5), DENYING PLAINTIFF'S MOTION TO PAY REMAINDER OF FILING FEE FROM RELEASE ACCOUNT (DKT. NO. 9) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff James Lamar Henderson, who is incarcerated at the Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 5, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 5) and Motion to Pay Balance of Filing Fee from Release Account (Dkt. No. 9)**

        A.    <u>Motion to Proceed without Prepaying the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. <u>See</u> 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On July 31, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $37.67. Dkt. No. 7. The court received that fee on August 20, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

      B.    <u>Motion to Pay Balance of Filing Fee from Release Account</u>

On May 13, 2025, the plaintiff filed a motion asking the court to issue an order directing his institution to allow him to use his release account to pay the $312.33 balance of the filing fee. Dkt. No. 9. The Prison Litigation Reform Act requires the court to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). The term "prisoner's account" encompasses both a prisoner's general account and his release account. <u>Spence v. McCaughtry</u>, 46 F. Supp. 2d, 861, 862 (E.D. Wis. 1999). "'Release account' means an account established for an [incarcerated individual] in which a percentage of his income is deposited in accordance with s. DOC 309.466 so that the [incarcerated person] has sufficient funds when released from the institution to purchase release clothing, out-of-state transportation, and other items and services needed on release." Wis. Admin. Code §DOC 309.02(18). Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy filing fee payment requirements. <u>Smith v. Huibregtse</u>, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001).

District courts generally do not allow plaintiffs to deplete the funds in their release account by paying the full filing fee from that account. Typically, incarcerated plaintiffs file a motion to proceed without prepaying the filing fee rather than paying the full $405 filing fee up front, as the plaintiff has done. The court then assesses an initial partial filing fee, as it did here and which the plaintiff already has paid. If a plaintiff does not have enough money in his general account to pay the initial partial filing fee, district courts allow for payment of that initial partial filing fee from the plaintiff's release account and the plaintiff pays the remaining balance of the filing fee over time from his general account. Because the court does not generally allow use of the release account to pay the full filing fee and because the plaintiff has not explained why he wants to use his release account rather than paying the balance of the filing fee over time, the court will deny his motion.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

3

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    <u>The Plaintiff's Allegations</u>

The plaintiff alleges that he was incarcerated at the Wisconsin Resource Center (WRC) during the events described in the complaint. Dkt. No. 1 at ¶3. Defendants Dr. Monese, Dr. Kercher and Dr. Karen Zordow work at the WRC. <u>Id.</u> at ¶¶4-6.

The plaintiff alleges that in July 2023, Monese prescribed him Risperidone and in January 2024, Kercher re-prescribed him the medication. <u>Id.</u> at ¶¶10-11. He states that the defendants placed him at unnecessary risk to his health and safety by prescribing him an anti-psychotic medication, which is "widely known to cause pain and suffering to a significant number of males who have been prescribed the same medication." <u>Id.</u> at ¶12. The defendants allegedly failed to inform the plaintiff of any advantages, disadvantages or alternatives to Risperidone. <u>Id.</u> at ¶13. They also allegedly failed to inform him of the risks, dangers and/or side effects of taking the medication. <u>Id.</u> at ¶14.

The plaintiff alleges that in mid-February 2024, he noticed that he had begun to develop breasts, and that his chest and nipples were very sore. <u>Id.</u> at ¶7. He says that he notified the health services unit (HSU), his blood was checked and staff documented that his prolactin level was more than ten times the "normal starting level." <u>Id.</u> at ¶8. The plaintiff states that prolactin is a pituitary hormone that stimulates milk secretion in female breasts, which can be produced in males who are taking Risperidone/Risperdal, a psychotropic medication. <u>Id.</u> at ¶9.

The plaintiff alleges that on March 29, 2024, he submitted a health service request (HSR) because of his chest developing female-type breasts and hurting. Id. at ¶15. He says that he was referred to a psychiatrist for his pain. Id. On April 15, 2024, the plaintiff allegedly received an HSR response advising him, "the medication causing this was discontinued and the medication you are taking, helps decrease prolactin." Id. at ¶16. About two weeks later, the plaintiff states that someone from HSU responded that the plaintiff "has been provided a printout of medication information." Id. at ¶17.

The plaintiff alleges that on May 24, 2024, Kercher felt the tissue in the plaintiff's chest area, and then downplayed and ignored the plaintiff's pain by denying him pain medication. Id. at ¶18. Five days later, the plaintiff allegedly submitted an HSR for chest pain and lack of sleep. Id. at ¶19. He says that he was given Tylenol and Ibuprofen for pain, but that they were ineffective. Id.

On June 10 and 16, 2024, the plaintiff allegedly submitted HSRs stating that the Ibuprofen and Tylenol were ineffective, and that he was in pain. Id. at ¶¶21-22. The plaintiff says he was seen by a Dr. Hermanitanio (not a defendant) who recommended muscle rubs and ice packs, which also were ineffective. Id. at ¶22. The plaintiff allegedly submitted another HSR on June 22, 2024 about the ineffective treatment and his pain. Id. at ¶23.

The plaintiff alleges that the defendants knew of the advantages, disadvantages and alternatives to prescribing Risperidone/Risperidol to the plaintiff yet failed to inform him of the possibility of growing painful breast tissue. Id. at ¶24. He states that the treatment for his substantial pain has

been inadequate. Id. at ¶25. The plaintiff says that the defendants' failure to effectively treat his gynecomastia could result in further injury or cause more pain. Id. at ¶26. The plaintiff asserts that the defendants' prescribing Tylenol and Ibuprofen allegedly shows they knew of his pain. Id. at ¶27.

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. Id. at ¶31. He also asserts that their actions amounted to negligence and medical malpractice in violation of Wisconsin state law. Id. at ¶33. The plaintiff seeks declaratory relief, compensatory damages and punitive damages. Id. at ¶38.

C.    Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Cesal, 851 F.3d at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of,

7

but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)). A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an incarcerated individual's pain. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (citing Estelle, 429 U.S. at 104-05).

The plaintiff may proceed on an Eighth Amendment claim against the defendants in their individual capacities based on his allegations that they did not advise him of the side effects of Risperidone and did not adequately treat him for those side effects. See Phillips v. Wexford Health Sources, Inc., 522 F. App'x 364, 367 (7th Cir. 2013) (Eighth Amendment protects incarcerated individuals from deliberate indifference to substantial risks of serious damages to their health, including risk of developing significant side effects from a medication) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993); Roe v. Elyea, 631 F.3d 843, 858 (7th Cir. 2011); Board v. Farnham, 394 F.3d 469, 479 (7th Cir. 2005)); see also Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011) ("prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition") (citing Greeno v. Daley, 414 F.3d 653, 655 (7th Cir. 2005)).

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 5.

The court **DENIES** the plaintiff's motion to pay the balance of the filing fee from his release account. Dkt. No. 9.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Dr. Monese, Dr. Kercher and Dr. Karen Zordow. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$312.33** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

9

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 11th day of June, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**